IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 1, 2002 Session

## DANIEL PAUL SPATAFORE v. CATHERINE JUANELLE SPATAFORE

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-96-646     Hon. John B. Hagler, Circuit Judge**

**FILED DECEMBER 5, 2002**

**No. E2001-02459-COA-R3-CV**

---

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for Appellant, Catherine Juanelle Spatafore.

Eric S. Armstrong, Cleveland, Tennessee, for Appellee, Daniel Paul Spatafore.

### OPINION

In this action, the Trial Court awarded custody of the parties' minor child to the father, and the mother has appealed.

The parties were divorced in November of 1996, and custody of their minor son was given to mother by agreement. In April of 1998, the parties filed an Agreed Order wherein they stipulated that there had been a material change of circumstances, and changed custody from the mother to the father. No support was ordered at that time, and the Order recites that it could be amended upon a showing of material change in circumstances. In May of the 1999, mother filed a Petition for Temporary Custody and Support, alleging the prior Agreed Order was entered due to a "physical problem" that mother was having, but that in fact the parties never changed the custody of the son to father, and that the son had continued to live with the mother even after the Agreed Order was entered until March of 1999.

After an evidentiary hearing, the Court said that he understood how serious the mother's drug issues were, and noted that it was a complex custody issue, and found the mother

needed to tell him what she was going to do about the drug issue, and her solution needed to be more stringent than what she had outlined. The court announced its decision, and granted temporary custody of the child to mother, and set a review of the case in May of 2000. Over a period of months there were several hearings and continuances with no permanent order as to change of custody. The hearings involved the use of drugs, the testing, and the mother's efforts to deal with her problem. After all of the evidentiary hearings, the Court on September 10, 2001, found that there had been a material change of circumstances and the father would be designated the "primary residential parent". In making the ruling, the Court commented that it was a difficult case and noted that at the conclusion of the previous hearing, the Court had ruled the mother's addiction issue was serious and that a strong rehabilitation program would be needed, and noted that the Court's goal was to restore the mother as custodian. The Court found that the plan that was submitted to monitor the mother in testing was approved, and noted that some of the drug screens which were required were found to be defective, due to the lack of chain of custody. The Court stated that the case was complicated by the mother's desire to relocate, but found that the mother had an "ongoing problem", that the mother had obtained multiple prescriptions from different doctors, and the doctors did not know that other doctors were giving prescriptions. The Court also found that the mother was not improving or making progress, even while being monitored by the Court. The Court then found the mother's drug issues posed a substantial risk of harm to the children, and that this risk was greater than the danger posed by taking the child out of the mother's home and away from his half-brother, and designated the father as the primary residential parent.

The mother appealed and raised the issues of whether there was a material change in circumstances, and that changing custody of the child was in the child's best interest.

Our standard of review is *de novo* with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

In making a custody modification, the court must find that a "material change in circumstances has occurred, which makes a change of custody in the child's best interests." *Kendrick v. Shoemake*, 2002 Tenn. LEXIS 489 (Tenn. Nov. 1, 2002), *citing Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002). Thus, the "threshold issue" is whether a material change of circumstances has occurred since the initial custody ruling.[1]

In this case, the Court found that a material change of circumstances had occurred due to the fact the mother had a drug problem which had not been resolved to the Court's satisfaction.

_____

[1] Even though there have been temporary custody modifications since the initial decree, the court made clear that these changes were merely temporary and not permanent in nature, and thus there is no dispute that the decree which must be analyzed to see whether a material change in circumstances has occurred is the initial custody decree.

The mother argues this cannot be a change of circumstances because father alleged that the mother had a drug problem prior to the parties' divorce. Thus, the mother's argument is that her drug addiction was known or reasonably foreseeable by the father at the time of the initial decree.

The proof introduced at the hearings was that the mother had some issue with her employment as a nurse in 1995 and missing medication, and father testified that he later found some empty medication containers at their home, but father did not testify that he knew at the time of the divorce the mother had a drug addiction. There was no proof that father knew at that time that mother's employment problems were the result of a drug addiction issue, or that the father knew that the mother was misusing drugs. Further, at trial, the mother denied having any drug problems until late 1997 or early 1998, and denied any wrongdoing in her employment as a nurse until that time frame. Thus, there is no proof that anyone knew or should have known at the time of the divorce that the mother would develop a drug addiction.

Since the initial custody decree was entered, however, mother admitted developing an addiction to hydrocodone which eventually led to her arrest for prescription forgery and two different two-week stays at rehabilitation facilities. Mother was in ongoing counseling for her problem, which the Court ordered and monitored, but she still obtained multiple hydrocodone prescriptions for her children (and some for herself) as well as multiple Xanax prescriptions written by different doctors. Mother engaged in two acts of prescription forgery, one of which brought about incarceration, and the other was obscured by the children's physician and mother.

The mother lost several nursing jobs due to issues with medications and/or drug testing, did not comply with her proposed plan, and never got into a "strong rehabilitation program" which the Court had ordered . The mother's course of conduct during the lengthy "monitoring period" by the Court demonstrated a pattern of what can only be described as drug-seeking behavior, in that the mother went to multiple doctors to get prescriptions for medicines that she should not have, misrepresented to the doctors about her behavior, and attempted to get refills on prescriptions that "leaked out", all of which was justifiably troubling to the Court. The Trial Court found the mother's behavior affected the child in a harmful way, because the mother involved the child and her other son in her schemes, and transported them at times when she was impaired, which was endangering to the children.

We hold that the mother's drug issues constituted a change which occurred since the initial custody decree, which was not reasonably foreseeable, and her addiction affects the child's well-being in a meaningful way. We affirm the Judgment of the Trial Court in finding that a material change of circumstances occurred, Tenn. R. App. P. 13(d).

Finally, once the threshold test of change of circumstances has been met, the Court must determine whether the custody modification is in the child's best interests. *Kendrick.* In making this determination, the Court must consider the factors listed in Tenn. Code Ann. §36-6-

106.[2]

The record establishes that both parents are concerned and loving parents, but the mother's substance abuse problem and concurrent irresponsible behavior and parenting militates against her as primary residential parent. The father demonstrated concern about the child and he has a stable home life, job, etc. The child's school records show excessive absenteeism, and his teacher testified that he exhibited tearful behavior such that she felt he needed to speak to the school counselor. Thus, while the child was a good student, he obviously suffered from anxiety undoubtedly caused by concerns he had , due to his mother's problems. The father exhibited a greater potential for future performance of parenting responsibilities, and had always encouraged the mother's time with the child so long as it did not include her driving with him in the car when she might possibly be impaired.

---

[2]These factors are:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

We affirm the Trial Court's naming the father as primary residential custodian as being in the best interest of the child.  Tenn. R. App. P. 13(d).

The preponderance of the evidence supports the Trial Court's findings, and the Trial Court properly held a material change of circumstances had occurred and a change of custody was in the child's best interest.  We affirm that Judgment and assess the cost of the appeal to Catherine Juanelle Spatafore.

_____
HERSCHEL PICKENS FRANKS, J.